**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANNA M. GALAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| THE LINCOLN NATIONAL LIFE | ) | |
| INSURANCE COMPANY, and | ) | |
| GROUP LONG TERM DISABILITY | ) | |
| INSURANCE FOR EMPLOYEES OF | ) | |
| THE HORTON GROUP. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

PLAINTIFF, ANNA M. GALAS, by her attorneys, STEPHEN A. JACKSON and DAVID A. BRYANT of BRYANT LEGAL GROUP PC, and complaining against the Defendants, THE LINCOLN NATIONAL LIFE INSURANCE COMPANY and GROUP LONG TERM DISABILITY INSURANCE FOR EMPLOYEES OF THE HORTON GROUP, states as follows:

### Jurisdiction and Venue

1.       Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"); and in particular, 29 U.S.C. §1132(e)(1) and §1132(f).  Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of employee welfare benefit plans.  In addition, this action may be brought pursuant to 28 U.S.C. §1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2.      The ERISA statute provides, at 29 U.S.C. §1133, as well as Department of Labor Regulations, at 29 C.F.R. §2560.503-1 provide a mechanism for administrative or internal appeals of benefits denials.  In this case those avenues of appeal have been exhausted and this matter is now properly before this Court for judicial review.

3.      Venue is proper in this district since a substantial part of the events or omissions giving rise to this claim occurred within the Northern District of Illinois.  29 U.S.C. §1132(e)(2), 28 U.S.C. § 1391(a).

**Nature of the Action**

4.      This is a claim seeking payment of long term disability ("LTD") (Claim No. 1140182988) under the employee welfare benefit plans provided to her as an employee of The Horton Group, and a group disability insurance policy issued by The Lincoln National Life Insurance Company ("Lincoln") and identified as Group Policy No. 000010135827 ("Policy"), attached and marked Exhibit "A."  This action is brought pursuant to ERISA § 502 (a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)).

5.      Plaintiff also seeks attorneys' fees pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g).

6.      The Policy was issued and delivered in Illinois.

7.      The Policy renews on an annual basis.

8.      The State of Illinois prohibits the inclusion of discretionary clauses in both health and disability insurance policies. According to 50 Ill. Admin. Code §2001.3, titled "Discretionary Clauses Prohibited":

No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the

contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

## The Parties

9.      At all times relevant hereto, the Plaintiff, Anna M. Galas ("Plaintiff" or "Galas"), was a resident of Frankfort, Illinois, within the Northern District of Illinois.

10.     Plaintiff, now age 55, was employed as a Senior Marketing Specialist at The Horton Group ("Horton") at its facility located at 10320 Orland Parkway, Orland Park, IL, 60467, within the Northern District of Illinois.

11.     Defendant, The Lincoln National Life Insurance Company ("Lincoln") at all times relevant hereto, was doing business throughout the United States and within the Northern District of Illinois.

12.     At all relevant times hereto, the disability Policy constituted part of an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

13.     Plaintiff received coverage under the LTD Plan as a benefit of her employment with Horton.

14.     Plaintiff was a "participant" as defined by 29 U.S.C. §1002(7) in those plans.

## Statement of Facts

15.     Plaintiff ceased working on April 30, 2014, due to multiple medical conditions and resulting physical limitations.

16.     In light of her medical conditions and their comorbid effect on her physical capacity for work, Plaintiff made a claim for short term disability ("STD") benefits under a Plan issued by Lincoln. (Exhibit "B")

17.     According to Lincoln, the Short Term Disability Policy sates:

"Total Disability" means your inability, due to Sickness or Injury, to perform the material and substantial duties of your regular occupation. A person engaging in any employment for wage or profit is not Totally Disabled."

(Exhibit "B" Page 8, Policy Page 6)

18.     Lincoln reviewed her claim to determine Plaintiff's eligibility to receive STD benefits, and on May 30, 2014, notified Plaintiff she was approved for STD benefits effective April 30, 2014.

19.     STD benefits were paid by Lincoln through September 23, 2014.

20.     Thereafter, as Plaintiff was unable to return to work due to her physical impairments Plaintiff made a claim for long term disability ("LTD") benefits under the Policy.

21.     According to Lincoln, the Long term Disability Policy states:

**TOTAL DISABILITY or TOTALLY DISABLED** will be defined as follows.

1.     During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2.     After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any Gainful occupation.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:

1.     are normally required to perform the Insured Employee's Own Occupation; and
2.     could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:
1.     the Employer is subject to the Act; or
2.     the Insured Employee has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render the Insured Employee unable to perform the Main Duties of the job.

Main Duties include those job tasks:
1.     as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
2.     as performed in the general labor market and national economy.

Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

(Exhibit "A", Page 11, Policy Page 10)

22.     On January 8, 2015, Lincoln notified Plaintiff of its decision to deny her LTD benefits despite no improvement in her medical condition.

23.     On May 11, 2015, Plaintiff filed her first appeal of Lincoln's denial of benefits.

24.     On July 30, 2015, Lincoln notified Plaintiff of its decision to uphold the denial of her LTD benefits despite no improvement in her medical condition.

25.     On January 25, 2016, Plaintiff submitted a second appeal of Lincoln's decision to deny her claim for disability benefits providing a detailed appeal letter with 121 pages of supporting medical evidence.

26.     Among the supporting medical evidence provided by Plaintiff was an MRI report of the lumbar spine of May 16, 2013, indicating multilevel degenerative changes with disc bulges at L1-L2, L2-L3, L3-4, and L4-5.  There is moderate left lateral recess disc protrusion abutting the exiting nerve roots at L2-L3; facet hypertrophy at L3-L4; and facet hypertrophy at L4-L5 with mild central canal and mild bilateral neuroforaminal stenosis.  (Exhibit "C")

27.     Among the supporting medical evidence provided by Plaintiff was an MRI report of the cervical spine of February 7, 2014, indicating moderate spondylosis and bulging discs present at C3-4, C4-5, C5-6, and C6-7.  At C3-4 there is moderate broad-based disc bulge that flattens the thecal sac, moderate acquired central spinal stenosis present, and moderate to severe neural foraminal narrowing on the right. At C5-6 there is disc protrusion with significant flattening of the thecal sac, moderate to severe acquired central spinal stenosis, and moderate impingement of the proximal neural foramen bilaterally.  (Exhibit "D")

28.     Among the supporting medical evidence provided by Plaintiff was a Residual Functional Capacity Questionnaire ("RFC") completed on October 27, 2015, by treating

physician Dr. Rewa Hasanat, stating Plaintiff can sit no greater than 30 minutes uninterrupted, and less than two hours total in an eight hour workday; can stand and walk no more than 30 minutes uninterrupted, and about two hours total in an eight hour workday. (Exhibit "E" Page 3)

29.      Further, Dr. Hasanat limits the Claimant's lifting to less than 10 pounds occasionally (no frequent lifting of any weight), and that she can rarely twist, stop, crouch, squat, and climb stairs.  Reaching is limited to 50% of an eight hour workday on the right extremity, and 75% on the left.  Ms. Galas is likely to miss more than 4 days of work each month due to her impairments or treatment.  (Exhibit "E" Page 3)

30.      Among the supporting medical evidence provided by Plaintiff was the additional statement of May 29, 2015, by Dr. Rewa Hasanat indicating:

"To Whom It May Concern:

For Medical reasons listed in previous office visits/consult notes, [Anna Galas] is unable to return to her work duties. She has exhausted treatment options with medication/PT/spinal injections, was referred to specialists (PMR, neurosurgery, PT, chiropractor), and even underwent second opinions, all did not improve symptoms. Lastly, she was referred for Functional Capacity Evaluation (FCE) at a separate and independent physical therapy rehab facility and was found to not have the physical capacity to perform her job functions as required.  The specific details and results are in the FCE report. This letter is provided in collaboration with her disability appeal process."

(Exhibit "F")

31.      The FCE of April 16, 2015, referenced above by Dr. Hasanat, conducted at Accelerated Rehabilitation Centers, states "Client does NOT demonstrate the physical capabilities and tolerances to perform all the essential job functions of the job." (Exhibit "G" Page 1)

32.      The FCE summary of test performance states "[c]onsistent Performance/Acceptable Effort indicates that the client's perceived limitations, and return to

work confidence are not negatively affecting symptom expression, consistency of effort, reliability of pain, and/or quality of effort. Data obtained is near or equal to Client's true status." (Exhibit "G" Page 2)

33.     The Plaintiff's pain physician, Dr. Suleiman B. Salman, discussed the results of the FCE with Plaintiff at an office visit of May 4, 2015. Dr. Salman's record of that visit noted the FCE indicates Plaintiff does not demonstrate the physical capabilities and tolerances to perform all essential job functions of her work. (Exhibit "H")

34.     Despite the overwhelming objective evidence provided, on March 8, 2016, Lincoln notified Plaintiff of its decision ("Decision") to deny the appeal. (Exhibit "I")

35.     In its Decision to Plaintiff, Lincoln acknowledges receipt of Dr. Hasanat's RFC, stating "[t]he case [was] provided with a Residual functional capacity Evaluation form from Dr. Hasanat dated October 27, 2015." (Exhibit "I" Page 5)

36.     In its Decision to Plaintiff, Lincoln provided no explanation of the consideration it gave to Dr. Hasanat's RFC, nor did Lincoln provide any discussion of Dr. Hasanat's detailed limitations described in the RFC. (Exhibit "I")

37.     Lincoln's Decision to Plaintiff indicates a reviewing physician, Dr. Oluremi Aliyu, had reviewed the Plaintiff's file and spoke with Dr. Rewa Hasanat on February 22, 2016. (Exhibit "I" Page 5)

38.     Regarding the conversation with Dr. Hasanat, Dr. Aliyu states, "[w]hen asked specifically what specific clinic finding supports the claim of inability to work or need for activity restrictions and/or limitations, Dr. Hasanat stated that this is based on the Claimant's stated [sic] that she is unable to work due to her ongoing muscle spasms and her limitation is due to her reported symptoms." (Exhibit "I" Page 5)

39.     Dr. Hasanat reviewed the Decision from Lincoln and the statement attributed to

Dr. Aliyu and provided a written rebuttal on April 12, 2016, stating:

> I reviewed the statement given by Dr. Aliyu and I disagree that this accurately captures
> my statements.  It is incomplete and does not reflect the medical opinion I have and that I
> gave to Dr. Aliyu. Further, the claim that the restrictions and limitations I gave are based
> on the Claimant's statement that she is not able to return to work due to her self-reported
> symptoms is not correct.
>
> What I reported to Dr. Aliyu is that while Ms. Galas does not have neurological deficits
> she does suffer from spinal stenosis, disk herniation, radiculopathy, chronic pain, and
> chronic spasms in the lumbar spine that prohibit prolonged activity of any kind.  On
> physical exam she exhibits extreme guarding due to pain, tenderness on palpation,
> especially the SI joint, and muscle spasms.  She is unable to stand, sit, or walk for any
> prolonged period of time.  I do not believe she is capable of performing any work that
> would require her to maintain a prolonged sitting or standing position for more than 20
> minutes at a time due to her chronic pain and spasms.
>
> I reviewed the functional capacity assessment of April 16, 2015, and agree with the
> physical therapist's opinion that Ms. Galas cannot perform the functions of work.  I
> reviewed the treatment notes from the pain physician Dr. Salman and I believe that Ms.
> Galas has not responded to multiple treatment options of medication, spinal injections,
> pain management doctors, neurosurgery, physical therapy, and chiropractic care.
>
> I gave a thorough medical assessment of Ms. Galas's limitations in a functional capacity
> questionnaire that I completed on October 27, 2015. I affirm the limitations in that
> assessment and reiterate that for the reasons above it is my medical opinion Ms. Galas
> cannot return to work.
>
> (Exhibit "J")

40.     On April 27, 2016, Plaintiff underwent additional lumbar spine surgery by Dr.

George S. Miz that included a staged anterior and posterior reconstruction.  Stage 1 consisted of

an anterior lumbar interbody fusion, L2-L3 and L3-L4 with PEEK interbody implants and

INFUSE bone graft via direct lateral transpsoas approach.  Stage 2 consisted of removal of

instrumentation at L4-L5 with exploration of L4-L5 fusion;  L1-L5 posterolateral fusion with

INFUSE bone graft and local bone graft, and L1-L5 MESA spinal instrumentation.  (Exhibit

"K")

41.     All administrative appeals seeking the award of disability benefits have now been exhausted.

42.     Plaintiff has been and continues to be disabled as defined by the provisions and terms of the Policy.

43.     Such benefits should continue under the terms of the Policy as long as Galas continues to meet the conditions for receipt of disability benefits.

## Relief Sought

WHEREFORE, Plaintiff prays for the following relief:

a.     That the Court enter judgment in Plaintiff's favor and against Defendants and that the Court order the Defendants to pay Disability benefits owed to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled;

b.     That the Court order Defendants to pay Plaintiff prejudgment interest at a rate of 9% per annum on all benefits that have accrued prior to the date of judgment in accordance with 215 ILCS 5/357.9 or 5/357.9a;

c.     That the Court order Defendant to continue to pay Plaintiff disability benefits so long as she continues to meet the Policy's terms and conditions;

d.     That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g); and

e.     That Plaintiff recover any and all other penalties, damages, relief to which she may be entitled, as well as the costs of this suit.

Respectfully submitted,

Dated: June 13, 2016                          /s Stephen A. Jackson_____
                                              Stephen A. Jackson
David A. Bryant                               Attorney for Plaintiff
Stephen A. Jackson                            Anna M. Galas

Bryant Legal Group PC                    sjackson@bryantlg.com
205 N Michigan Ave, Ste 3910
Chicago, Illinois 60601
 (312) 561-3010